Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 7338 | DATE | 9/10/2002 |
| CASE TITLE | Douglas Press, Inc. vs. Tabco, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. For the foregoing reasons, this Court construes the claims of the '737 patent and the '200 patent as stated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 11 2002 date docketed | 71 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 9/10/2002 date mailed notice | |
| IS | courtroom deputy's initials | | IS mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

| | | |
|---|---|---|
| **DOUGLAS PRESS, INC.,** an Illinois corporation, | ) ) ) | SEP ? 2002 |
| Plaintiff, | ) ) | Case No. 00 C 7338 |
| v. | ) ) ) | Magistrate Judge Martin C. Ashman |
| **TABCO INC.**, a Delaware corporation, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Douglas Press, Inc. filed suit against Tabco Inc. alleging that it infringed U.S. Patent No. 5,046,737 (the "'737 patent") and U.S. Patent No. 5,407,200 (the "'200 patent") by manufacturing and selling certain seal-card games. On March 25, 2002, this Court ordered both parties to submit briefs on the issue of claim construction. About four months later, on July 19, this Court held a hearing in accordance with *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-81 (Fed. Cir. 1995). This Court's construction of the claims at issue in this case is set forth below.

### I. Background

#### A. Patented Inventions

The '737 patent and the '200 patent pertain to lottery-game systems involving playing tickets and a master game card. The lottery games are typically played at fund-raising events or at bingo halls between bingo games.

The '737 patent, titled *Lottery-Type Game System with Bonus Award*, describes and claims an invention that embodies a lottery-game system having playing tickets to provide a first level of play and two or more additional levels of play, and a master game card that is used in conjunction with the playing tickets. The '200 patent, titled *Lottery-Type Gaming System Having Multiple Playing Levels*, describes and claims an invention that embodies a lottery-game system having playing tickets to provide a first level of play and a master game card that is used in conjunction with the playing tickets to provide additional levels of play in a game of "elimination."

### B. Disputed Claims

Claim 1 of the '737 patent, the only claim at issue with respect to the '737 patent, reads as follows (with added emphasis on the disputed terms):

> A lottery-type game system providing multiple levels of play, comprising:
>
> a plurality of playing cards each of which can be purchased by game players for a predetermined price per playing card,
>
> each of said playing cards having a plurality of groups of game symbols displayed thereon, with each of said cards including selectively removable *means for concealing the groups of game symbols thereon prior to purchase by a player*, said means for concealing said game symbols being removed by the player after purchase for providing a first level of play, and
>
> a master game card for use in conjunction with said playing cards,
>
> at least one of said master game card and said plurality of playing cards having displayed thereon *means for establishing the eligibility of a plurality of selected game players* having playing cards displaying predetermined selected ones of said game symbols,

said master game card including *means for identifying at least one of said eligible players, and selectively removable means for concealing said identifying means prior to establishing all of said eligible game players* for providing a second level of play,

said master game card further including award identifying means comprising a plurality of award values displayed on said master game card, and selectively removable means for concealing said award values, *so that said selected one of said eligible players can determine the award to be received by removing the concealing means associated with one of said award values* for providing a third level of play.

(U.S. Patent No. 5,046,737 col. 5, ll. 11-40; col. 6, ll. 1-4.) Claim 1 of the '200 patent, the only claim at issue with respect to the '200 patent, reads as follows (with added emphasis on the disputed terms):

A gaming system apparatus providing multiple levels of play, comprising:

a plurality of playing cards, each of the playing cards including at least one game symbol displayed thereon;

at least one of said playing cards displaying a winning game symbol;

a master game card for use in conjunction with the plurality of playing cards, the master game card including a plurality of playing areas representing a plurality of playing levels;

the plurality of playing areas including a first playing area representing a first playing level and at least one successive area representing an additional playing level;

each successive playing area having at least one previous playing area representing a previous level of play;

each of the playing areas including indicia having at least one award identifying *means for identifying both an award and at least one said winning game symbol associated with said identified award*;

the first playing area including indicia having at least two award identifying means collectively having at least two different winning game symbols;

> each of the successive playing areas including indicia having at least one award identifying means which includes a winning game symbol of a same type present in each of the previous playing areas; and
>
> at least one of the award identifying means of the first playing area including a winning game symbol absent from the award identifying means of at least one successive playing area.

(U.S. Patent No. 5,407,200 col. 7, ll. 23-56.)

## II. Discussion

### A. Claim Construction Standards

Courts construe claims as a matter of law. *Markman*, 52 F.3d at 979. The object is to determine how one of ordinary skill in the art would have understood the claims at the time the patent was issued. *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997); *Markman*, 52 F.3d at 986; *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994). Generally, courts attach the ordinary and customary meaning to the words used in the claims. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). But, as the inventor is free to be his own lexicographer, courts take into account any special meaning attached to the words by the inventor as long as that meaning is clearly stated in the patent and prosecution history. *Id.*

Claim construction begins and ends with the language of the claims. Yet courts must construe the language of the claims in light of the specification, which includes a written description of the invention and a best mode or preferred embodiment of the invention. *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995) (quoting *United States v. Adams*, 383 U.S. 39, 49 (1966)); *Markman*, 52 F.3d at 979. The

specification, considered the single best guide to the meaning of a disputed word, serves as a dictionary of sorts when it defines words used in the claims either expressly or by implication. *Vitronics Corp.*, 90 F.3d at 1582. It may show that the inventor used words in a claim in a manner inconsistent with their ordinary meaning. More generally, the specification provides context to the claims to illuminate the meaning of the language used therein. *Abtox, Inc.*, 122 F.3d at 1023.

The prosecution history of the patent, if in evidence, is another form of intrinsic evidence that courts may use to ascertain the meaning of the claim language. *Markman*, 52 F.3d at 979. It contains the avowed understanding of the inventor when he was making his application, providing clues as to what the claims do not cover. *Goodyear Dental Vulcanite Co. v. Davis*, 102 U.S. 222, 227 (1880). After all is said and done, the prosecution history should confirm a court's construction of the patent. *Id.*

Lastly, courts may consider evidence external to the invention like publications, dictionaries, and expert testimony, but only if necessary to assist in determining the meaning of the claim language. *Vitronics Corp.*, 90 F.3d at 1583. Although such evidence may be used to gain a better understanding of the claims (if necessary), it must not be used to vary the claims. *Markman*, 52 F.3d at 981.

Whether the claims meet the requirement of 35 U.S.C. § 112, ¶ 2 is a matter of claim construction, and thus a determination for the court to make as a matter of law. *S3 Inc. v. Nvidia Corp.*, 259 F.3d 1364, 1367 (Fed. Cir. 2001). The requirement that claims "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention" is met when the claims, read in light of the specification, "reasonably apprise those skilled in the art of

the scope of the invention." *Miles Labs., Inc. v. Shandon Inc.*, 997 F.2d 870, 875 (Fed. Cir. 1993). If one employs means-plus-function language in his claims, the claimed function and its supporting structure in the specification must be presented with sufficient particularity to satisfy § 112, ¶ 2. *S3 Inc.*, 259 F.3d at 1367. Otherwise, the applicant has in effect failed to "particularly point[] out and distinctly claim[]" his invention. *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994). Such a determination of indefiniteness and invalidity "requires a finding, by clear and convincing evidence, that the specification lacks disclosure of structure sufficient to be understood by one skilled in the art as being adequate to perform the recited function." *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376-77 (Fed. Cir. 2001).

### B. The '737 Patent

#### 1. Means for Concealing the Groups of Game Symbols

The first point of contention between the parties concerns the meaning of lines 16 through 20 of Claim 1. Defendants state that the means-plus-function limitation in these lines limits the '737 patent to player tickets "of the multi-window type," which is the type of ticket shown in Figure 2. Plaintiff concedes that the claim language requires multiple groups of game symbols, but disputes that the means-plus-function limitation requires each group of game symbols to be separately concealed by selectively removable means.

The function of the means-plus-function limitation in lines 18 through 20 of Claim 1 is "concealing the groups of game symbols [on the playing card] prior to purchase by a player." (U.S. Patent No. 5,046,737 col. 5, ll. 19-20.) The corresponding structure specifically disclosed

in the written description is either a removable portion of the upper ply or scratch-off material. (U.S. Patent No. 5,046,737 col. 3, ll. 27-42.)

We reject Defendants' construction that the corresponding structure must cover each group of game symbols separately because the language of the written description does not support such a construction. *Cf. Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1361-63 (Fed. Cir. 2000). The written description describes the concealing means as an upper ply of material. It mentions that the upper ply is typically found in "flap-like portions" but that a game embodying the principles of the invention claimed in the '737 patent may be "otherwise configured." (U.S. Patent No. 5,046,737 col. 3, ll. 32-40.) The written description also describes the concealing means as a scratch-off arrangement. (U.S. Patent No. 5,046,737 col. 3, l. 41.) Although the limitation of "flap-like portions" is depicted in Figure 2, we decline to limit the corresponding structure beyond what is necessary to perform the claimed function. *See Itron, Inc. v. Benghiat*, 169 F. Supp. 2d 1073, 1085 (D. Minn. 2001); *Boler Co. v. Neway Anchorlok, Int'l, Inc.*, 92 F. Supp. 2d 671, 677 (N.D. Ohio 2000) (quoting *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir.1999)). Accordingly, we construe lines 16 through 20 of Claim 1 to mean that every game card has game symbols on the card that are grouped together and concealed so that the player does not know what the groups of game symbols are when he purchases the card.

## 2. Means for Establishing the Eligibility of a Plurality of Selected Game Players

The next matter in dispute involves the fourth element of Claim 1. Defendants argue that the language of the element does not specify the meaning of eligibility and that nothing in the specification ties structure to the means for establishing limitation. Plaintiff asserts that the term eligible should be given its ordinary meaning and that structure corresponding to the means for establishing limitation is sufficiently disclosed in the specification.

We agree with Plaintiff that the term eligible should be given its ordinary meaning—fit and proper to be chosen. (*See* Pl.'s Reply Br. at 7.) Words are given their ordinary meaning unless it appears that the inventor used them otherwise. *Bell Communications Research, Inc.*, 55 F.3d at 620. The function of the means-plus-function limitation in lines 28 through 31 of Claim 1 is "establishing the eligibility of a plurality of selected game players having playing cards displaying predetermined selected ones of said game symbols." (U.S. Patent No. 5,046,737 col. 5, ll. 28-31.) The corresponding structure specifically disclosed in the written description and depicted in Figure 1 is player tickets having predetermined selected ones of the game symbols, such as numeric designations like 013, 113, 213, etc., or a player ticket being the last ticket sold. Defendants' assertion that there is "absolutely nothing" in the specification tying the means for establishing limitation to any structure is untenable. Accordingly, we construe lines 28 through 31 of Claim 1 to mean that either the master game card or the game cards, or both, display a criteria, through selected game symbols or a last sale designation, for determining those players who are eligible to continue playing beyond the first level.

### 3. Means for Identifying at Least One of Said Eligible Players

Defendants' objection to Plaintiff's construction of lines 32 through 33 of Claim 1 is that "printed matter is not structure supportive of a means-plus-function limitation." (Defs.' *Markman* Br. at 11.) Defendants fail to cite any authority to support this argument.

The function of the means-plus-function limitation in lines 32 through 33 of Claim 1 is "identifying at least one of said eligible players." (U.S. Patent No. 5,046,737 col. 5, ll. 32-33.) The corresponding structure specifically disclosed in the written description and depicted in Figure 1 is an identifier corresponding to a predetermined one of the selected game symbols, such as the numeric symbol 113, or to the last sale designation. (U.S. Patent No. 5,046,737 col. 4, ll. 3-14.) We find no basis for Defendants' assertion that the game symbols or the last sale designation cannot serve as the structure to carry out the identifying function.[1] Therefore, we reject it.

### 4. Said Master Game Card Including Means for Concealing Said Identifying Means Prior to Establishing All of Said Eligible Game Players for Providing a Second Level of Play

Moving on, Defendants state that the fifth element of Claim 1 does not require the winner at the second level of play (who advances to the third level of play) to be predetermined—i.e., determined prior to the play of the game. From what we can tell, Defendants aver that, because the claim language does not require that all concealing means are removed by the game operator,

---

[1] *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *John v. Barron*, 897 F.2d 1387, 1393 (7th Cir. 1990) (Briefs "plainly require[ ] more than a one page argument unsupported by any authority.").

the winning player at the second level who advances to the third level is not predetermined. (Defs.' *Markman* Br. at 7 ("If the master game card has only one such seal, as in the illustrated embodiment, then obviously in that special case the player who may play at the third level of play must be predetermined at the time of manufacture.").) Plaintiff points to the claim language and rulings in *Douglas Press, Inc. v. World Wide Press, Inc.*, No. 99 C 7539, 2002 WL 663589, at *3-4 (N.D. Ill. Mar. 28, 2002), and *Bonanza Press, Inc. v. Douglas Press, Inc.*, No. C00-0133C, 2000 U.S. Dist. LEXIS 21959, at *13-14 (W.D. Wash. Aug. 17, 2000), to refute Defendants' construction. After review, it is evident that Plaintiff's argument in response misses the mark.[2]

The function of the means-plus-function limitation in lines 32 through 33 of Claim 1 is "identifying at least one of said eligible players." (U.S. Patent No. 5,046,737 col. 5, ll. 32-33.) The corresponding structure specifically disclosed in the written description is at least one bonus player being identified by a predetermined one of the selected game symbols or a last sale designation on the inside surface of the lower ply of the master game card. (U.S. Patent No. 5,046,737 col. 4, ll. 6-14.) This structure is depicted in Figure 1. The function of the means-plus-function limitation in lines 34 through 36 of Claim 1 is "concealing said identifying means prior to establishing all of said eligible game players for providing a second level of play." (U.S. Patent No. 5,046,737 col. 5, ll. 34-36.) The corresponding structure specifically disclosed in the written description and depicted in Figure 1 is a selectively removable portion of the upper ply. (U.S. Patent No. 5,046,737 col. 4, ll. 8-11.)

---

[2] For instance, Plaintiff states that "the player or players identified in the second level are predetermined at the time of manufacture—prior to [the] sale of the playing cards and seal cards." (Pl.'s Reply Br. at 4.) Defendants do not dispute this point.

Because we find that the concealing structure is limited to a single portion of the upper ply (*see* Tr. Oral Argument 7/19/02, at 36, 44), we reject Defendants' assertion that the winning player at the second level who advances to the third level is not predetermined. When the concealing structure is removed, the winner/winners at the second level of play who advance(s) to the third level of play is/are revealed. Defendants concede that, under such circumstances, such winner/winners is/are determined prior to the play of the game. (*See* Defs.' *Markman* Br. at 7 ("If the master game card has only one such seal, as in the illustrated embodiment, then obviously in that special case the player who may play at the third level of play must be predetermined at the time of manufacture.").) Accordingly, we construe lines 34 through 36 of Claim 1 to mean that if more than one predetermined identifier is concealed prior to the play of the game, then all must be revealed simultaneously during the game.

### 5. Means for Concealing Said Identifying Means Prior to Establishing All of Said Eligible Game Players

Defendants next attack Plaintiff's construction of the fifth element of Claim 1 because the means-plus-function limitation in lines 34 through 36 lacks corresponding structure. Specifically, Defendants contend that the structure corresponding to the means-plus-function limitation in lines 34 through 36 requires human intervention, which is not structure for purposes of § 112, ¶ 6. Plaintiff chose not to address this argument in its brief, claiming, albeit incorrectly, that Defendants' argument is improper at the time of claim construction. (Pl.'s Reply Br. at 9-10.)

The function of the means-plus-function limitation in lines 34 through 36 of Claim 1 is "concealing said identifying means prior to establishing all of said eligible game players for

providing a second level of play." (U.S. Patent No. 5,046,737 col. 5, ll. 34-36.) The corresponding structure specifically disclosed in the written description and depicted in Figure 1 is, as mentioned earlier, a selectively removable portion of the upper ply. (U.S. Patent No. 5,046,737 col. 4, ll. 8-11.)

Human invention is unnecessary to conceal the identifying means. Although it cannot be disputed that human intervention is necessary to remove the portion of the upper ply performing the concealing function, such a function is not a part of the claim element. *Cf. Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, No. 01-1198, 2002 WL 1478487, at *10 (Fed. Cir. July 11, 2002) ("Excluding the physician, no structure accomplishes the claimed monitoring of ECG signals and activation of the charging means in the presence of abnormal cardiac rhythm."). Accordingly, we find Defendants' position unfounded.

> 6. Said Selected One of Said Eligible Players Can Determine the Award to Be Received by Removing the Concealing Means Associated with One of Said Award Values for Providing a Third Level of Play

Finally, Defendants state that the language of the sixth element of Claim 1 permits the player advancing to the third level to remove only one concealing structure to obtain a prize. Plaintiff responds by accusing Defendants of improperly construing the claim language to require a limitation from the written description.

The language of the sixth element of Claim 1 allows the selected one of eligible players to receive an award by removing the concealing means associated with *one* of said award values for providing a third level of play. This language belies Plaintiff's construction, which allows the

- 12 -

selected one of said eligible players to remove the concealing means associated with at least two of said award values.[3] (Pl.'s Reply Br. at 12; Tr. Oral Argument 7/19/02, at 44-45.) Further support for Defendants' construction comes from the written description. It states that "each [award] is concealed by a respective flap-like portion of the upper ply," and that "[i]t is contemplated that the bonus player will open only one of the flap-like portions . . . ." (U.S. Patent No. 5,046,737 col. 4, ll. 32-35.) Thus, with regard to the construction of the sixth element of Claim 1, we side with Defendants. The proper construction of the sixth element of Claim 1 is that it allows a bonus player to remove only one concealing means associated with one award value.

### C.     The '200 Patent

The sole dispute regarding the '200 patent concerns the construction of the sixth element of Claim 1. Defendants state that no structure corresponds to the function of "identifying both an award and at least one said winning game symbol associated with said identified award." (U.S. Patent No. 5,407,200 col. 7, ll. 43-45.) In the alternative, Defendants argue that the means for identifying limitation requires the winning game symbol to be located in the same discrete area as the associated prize. Plaintiff criticizes Defendants for ignoring the claim language and for reading concocted limitations into the claim, but Plaintiff fails to address Defendants' means-plus-function argument.

---

[3] On this point, Plaintiff's reply brief is inconsistent. On page eleven Plaintiff states that the claim language allows a player to "uncover three concealing elements" to locate a combination of symbols that together signifies an award value. But Plaintiff's proffered claim construction on page twelve reads: "The selected winner(s) from the second level of play chooses from at least two concealed award values on the master game card . . . ."

After review, we do not believe that lines 42 through 45 of Claim 1 contain a means-plus-function limitation under § 112, ¶ 6. To invoke § 112, ¶ 6, the alleged means-plus-function limitation "must not recite a definite structure which performs the described function." *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996) ("Merely because a named element of a patent claim is followed by the word 'means' . . . does not automatically make that element a 'means-plus-function' element under 35 U.S.C. § 112, ¶ 6."). Here, element six recites a definite structure that performs the identifying function, namely, indicia (printed matter). Furthermore, element six recites the location of the indicia—at each of the playing areas. *See id.*; *cf. Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.*, 157 F.3d 1311, 1319 (Fed. Cir. 1998).

Assuming that lines 42 through 45 contain a means-plus-function limitation, as urged by Defendants, we disagree with Defendants that clear and convincing evidence shows that the means-plus-function limitation lacks corresponding structure. The function of the means-plus-function limitation in lines 42 through 45 of Claim 1 is "identifying both an award and at least one said winning game symbol associated with said identified award." (U.S. Patent No. 5,407,200 col. 7, ll. 43-45.) The corresponding structure specifically disclosed in the written description and depicted in Figure 1 and Figure 2 is indicia consisting of printed matter (an award or a winning game symbol) at a particular playing area at a particular playing level. In the end, whether read as containing a means-plus-function limitation or not, the construction of element six of Claim 1 is the same.

We agree with Plaintiff that there is no limitation in the sixth element of Claim 1 that the award and associated winning game symbol must be printed at the same particular playing area at

a particular playing level—e.g., the award is printed on the concealing structure and the winning game symbol is printed underneath, revealed by removing the concealing structure. *See Douglas Press, Inc.*, 2002 WL 663589, at *5 (reaching the same conclusion). Rather, the claim language requires only that indicia consisting of printed matter at a particular playing area at a particular playing level identify the award connected to a winning game symbol. In other words, the award associated with the winning game symbol may appear in one location on the master game card while the winning game symbol appears in another location so long as indicia consisting of printed matter are present at a particular playing area at a particular playing level to connect the two. The proper construction of lines 42 through 45 is as follows: Each of the playing areas on the master game card has printed matter to identify both an award and a winning game symbol of a player identified as being associated with that award.

### III. Conclusion

For the foregoing reasons, this Court construes the claims of the '737 patent and the '200 patent as stated above.

ENTER ORDER:

MARTIN C. ASHMAN
United States Magistrate Judge

Dated: September 10, 2002.

Copies have been mailed to:

| | |
|---|---|
| RICHARD D. HARRIS, Esq. | RICHARD A. ZACHAR, Esq. |
| HERBERT H. FINN, Esq. | BRUCE A. RADKE, Esq. |
| JAMES K. CLELAND, Esq. | Vedder, Price, Kaufman & Kammholz |
| Law Offices of Dick and Harris | 222 North LaSalle Street |
| 181 West Madison Street | Suite 2600 |
| Suite 3800 | Chicago, IL 60601 |
| Chicago, IL 60602 | |
| | |
| Attorneys for Plaintiff | Attorneys for Defendants |